UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SCHIESSER, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 16-cv-00730 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| FORD MOTOR COMPANY, ) ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

On April 11, 2016, Plaintiff filed a First Amended Complaint, a putative class action, alleging breach of express warranty; violations of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq*.; violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., as well as a claim of common-law fraud related to Defendant's sale and lease of certain vehicles from 2011 to 2015. Defendant filed a Motion to Dismiss the First Amended Complaint [25] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. For the reasons discussed below, Defendant's Motion to Dismiss [25] is granted.

## BACKGROUND

Plaintiff, David Schiesser ("Plaintiff" or "Schiesser"), is a resident of Illinois. (Am. Compl. ¶ 3). Defendant, Ford Motor Company ("Ford" or "Defendant"), is a Delaware corporation with its principal place of business in Dearborn, Michigan. (*Id*. ¶ 4). Defendant is a merchant in the business of manufacturing, marketing, and selling vehicles. (*Id*. ¶ 61).

In his First Amended Complaint ("FAC"), Plaintiff alleges that in June 2012, he purchased a model year 2013 Ford Explorer vehicle ("Vehicle") manufactured by Defendant. (*Id*. ¶ 51.) Plaintiff alleges that the warranty applicable to his vehicle, Ford's New Vehicle Limited Warranty, states that it is limited to three years from the date of purchase or 36,000 miles ("Warranty"). (*Id*. ¶¶ 58, 60). The Warranty promises that, while under the applicable coverage period, an authorized Ford dealership would, without charge, repair, replace, or adjust all parts on a vehicle that are affected by factory defects. (*Id*. ¶ 58). The Warranty is "limited to repair, replacement, or adjustment of defective parts and the duration of any implied warranty 'including the implied warranty of merchantability and fitness for a particular purpose, are limited to the duration of the original warranty.'" (*Id.*). Ford's warranty allegedly purports to disclaim responsibility for "loss of time," "loss of your transportation or use of the vehicle," "the cost of rental vehicles, fuel, telephone, travel, meals, or lodging, the loss of personal or commercial property, the loss of revenue, or for any other incidental or consequential damages you may have." (*Id*. ¶ 60.)

Plaintiff alleges that since 2011, Defendant has been aware that the exhaust system of certain vehicles it designed and manufactured, including the vehicle he purchased, is defective because exhaust odor and gases, including carbon monoxide, enter into the vehicle's passenger compartment (the "Defect"). (*Id*. ¶¶ 1, 8, 9, 10, 13, 23, 32, 34, 49, 64). Because of the Defect, Plaintiff alleges, he is at risk of inhaling the fumes, which could cause serious physical harm; and the Defect makes his Vehicle unreasonably dangerous and unfit for safe operation. (*Id*. ¶ 56). Plaintiff alleges that Defendant actively represented that its cars were safe. (*Id*. ¶ 54). Plaintiff alleges that he would not have purchased the Vehicle had he known of the Defect. (*Id*. ¶ 55).

Plaintiff further alleges that Defendant has not recalled the vehicles nor has it notified consumers that the vehicles could be dangerous and should be replaced. (*Id*. ¶ 118).

In September 2015, Plaintiff began to notice exhaust odor accumulating in the passenger cabin of his Vehicle; and, in October 2015, Plaintiff brought his Vehicle to the dealership where he purchased the Vehicle, to service the problem. (*Id*. ¶ 52-53). After being contacted by Plaintiff's dealership, Defendant allegedly proposed two repairs costing between $800 to $900, and neither was guaranteed to fix the Defect. (*Id.*). Plaintiff claims that the dealership informed him that Defendant knew of the Defect but had no means to fix it. (*Id*. ¶ 84). Plaintiff alleges that he did not elect to attempt to repair the Defect because neither repair was guaranteed. (*Id*. ¶¶ 53, 106). As a result, Plaintiff claims to have suffered loss of use and diminished value in his Vehicle. (*Id*. ¶ 55.)

Plaintiff acknowledges that the Warranty had already expired when he brought the Vehicle into the dealership for service. (*Id*. ¶¶ 53, 58, 89). Plaintiff alleges that the Warranty is procedurally and substantively unconscionable. (*Id.* ¶¶ 59-63.) Plaintiff alleges that at the time he purchased his Vehicle, Defendant knew of the Defect because: (1) Ford's internal testing systems likely demonstrated the Defect since before the first vehicles were sold in 2010; and (2) Ford has received numerous complaints on the issue in 2011 and 2012, prior to the time that Plaintiff purchased the Vehicle. (*Id*. ¶¶ 22-30; 61-62.) Defendant also issued two Technical Service Bulletins ("TSB") in December 2012 and July 2014 in response to customers' complaints of an exhaust odor in the passenger compartments of vehicles. (*Id*. ¶¶ 32, 33). According to Plaintiff, both TSBs failed to disclose that the exhaust odor included carbon monoxide and failed to provide a specific and effective fix to the exhaust fumes problem. (*Id*. ¶¶ 35, 37).

In the FAC, Plaintiff alleges the following: (Count I) breach of express warranty; (Count II) violations of the Magnuson-Moss Warranty Act; (Count III) violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"); (Count IV) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); and (Count V) common-law fraud.

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

## ANALYSIS

Defendant argues that the FAC should be dismissed for failure to state a claim upon which relief can be granted. Defendant argues that Count I of the Complaint (breach of express warranty) should be dismissed because Plaintiff's Warranty expired and that if Count I fails, Count II (violation of Magnuson-Moss Warranty Act) also fails. Defendant argues that Count III

4

(violation of IUDTPA) should be dismissed because Plaintiff does not demonstrate a plausible likelihood of future harm. With respect to Count IV (violation of ICFA), Defendant argues it should be dismissed because Plaintiff does not plead that he received a communication from Ford that omitted material information prior to purchasing his Vehicle. Finally, Defendant argues that Count V (common-law fraud) should be dismissed because Plaintiff failed to plead in accordance with the requirements of Federal Rule of Civil Procedure 9(b).

*Count I (Breach of Express Warranty)*

In Count I of the FAC, Plaintiff asserts a claim for breach of express warranty. Plaintiff alleges he purchased his Vehicle from a Ford dealership in June 2012 in Orland Park, Illinois.[1] He began to notice exhaust fumes accumulating in his Vehicle in or about August or September 2015. Plaintiff brought his Vehicle into the dealership for service in October 2015, after the Warranty expired. Plaintiff alleges that at the time of purchase, Ford provided the Warranty that covered the Vehicle for a time period of either three years or 36,000 miles.

To state a claim for breach of express warranty, a plaintiff "must allege the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the warranty's terms, a failure by the defendant to do so, compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, 155 F. Supp. 3d 772, 787 (N.D. Ill. 2016) (citations omitted); *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *4-5 (N.D. Ill. Dec. 18, 2015).

Ford argues that Plaintiff has admitted that he did not experience a problem with his Vehicle or seek to have any problem repaired within the time period or mileage limitation stated

---

[1] The parties agree that Illinois law applies to this diversity action.

in the Warranty.  Therefore, Ford argues, Count I should be dismissed.  In response, Plaintiff argues that "the date when Schiesser *began to notice* the exhaust fumes is not determinative." (Resp. at p. 5).  Plaintiff claims that the Warranty limitations, including the time and mileage, are invalid because the Warranty is procedurally and substantively unconscionable.  (FAC ¶¶ 59-63.)

A court can invalidate a contract if it is either procedurally or substantively unconscionable.  *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 890 F. Supp. 2d 912, 943 (N.D. Ill. 2012); *see Snyder v. Komfort Corp.*, No. 07 C 1335, 2008 WL 2952300, at *4 (a written warranty is a contract, and courts interpret contracts according to their plain meaning under Illinois law).  Procedural unconscionability refers to both a situation where a term is so difficult for a plaintiff to find or understand that he cannot have been aware he was agreeing to it and also to a plaintiff's lack of bargaining power or lack of meaningful choice.  *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *7 (N.D. Ill. Dec. 18, 2015) (citing *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006)).  Substantive unconscionability refers to contract terms which are "inordinately one-sided in one party's favor."  *Id*.

Plaintiff cannot argue the FAC alleges that he complied with the Warranty terms.  As mentioned above, the FAC states that he brought his Vehicle into a Ford dealership after the Warranty expired.  Plaintiff argues the Warranty's time and mileage limitations are unconscionable and unenforceable because Ford was on notice of the Defect; continued to sell the Vehicle to Plaintiff; and by the time consumers knew of the Defect, Ford has benefited from short warranty limitations in not having to cure the Defect, as the Vehicles are out of warranty. *See, e.g.,* FAC ¶¶ 59-63; 87-89.  The FAC states Ford has had knowledge of the Defect since at least 2011 based on customer complaints posted on a message Board on the Ford website regarding exhaust odor in the passenger compartments of Ford Explorers.  *Id*. ¶¶ 22-30.  Plaintiff

6

further states that Ford knew of the Defect in his year-model when it issued TSB 12-12-4 and 14-0130, starting about six months after Plaintiff purchased his Vehicle. *See id*. ¶¶ 21-37. However, Ford never notified Plaintiff of the Defect.

Defendant argues that the Warranty is not unconscionable and relies primarily on *Darne*, 2015 WL 9259455. In *Darne*, the plaintiffs opposed the defendant's motion to dismiss by claiming, *inter alia*, that the durational limitation in its New Vehicle Limited Warranty covering 6.4-liter Super Duty diesel engines was substantively and procedurally unconscionable. *Id*. at *7. In ruling that a vehicle warranty was not procedurally unconscionable, the court pointed to plaintiffs' failure to plead facts substantiating an allegation that Ford used its bargaining power to force them to enter into the warranty or facts establishing "when [plaintiffs] became aware of the warranty or whether it induced their purchases or whether they learned about the warranty's duration after completing their purchases." *Id*. at *8. The court further noted that, with respect to substantive unconscionability, plaintiffs stated "no factual allegations that the time period or mile duration was unreasonably short," other than the conclusory statement that the subject engines "would fail repeatedly beyond the warranty period." *Id.* at *8. The court also found it significant that "Ford **expressly acknowledged that parts of its vehicle might be defective**," and that is the very reason why the time/mileage limitation is provided. *Id*. (bold/italics in original).

Similarly, here, Plaintiff has not alleged enough to substantiate allegations that the Warranty is procedurally or substantively unconscionable. As in *Darne*, Plaintiff has not alleged when he became aware of the Warranty or whether it induced his purchase or whether he learned about the Warranty's duration after he purchased the Vehicle. Additionally, other than a conclusory allegation that the Warranty was too short, the FAC does not allege that the three-

7

year or 36,000 mile Warranty was unreasonably short. The allegations that Ford knew of the Defect in 2011 were based on customer complaints about their "new" Ford vehicles, one of which had accumulated 1,700 miles. (FAC at Ex. A.) Accordingly, as currently pled, the FAC does not allege that the Warranty was procedurally or substantively unconscionable. Therefore, the Motion to Dismiss is granted as to Count I.

*Count II (Magnuson-Moss)*

Defendant contends Count II, a claim under the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301, should be dismissed because Plaintiff cannot sustain a breach of express warranty claim under Illinois law.

The Magnuson-Moss Warranty Act creates a federal cause of action for breach of written and implied warranties under state law. *See* 15 U.S.C. § 2310(d)(1). The ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim. *See In re Gen. Motors Corp. Dex-Cool Products Liab. Litig.*, 241 F.R.D. 305, 315 (S.D. Ill. 2007) ("Although Plaintiffs bring this action pursuant not to state law but the Magnuson-Moss Act, state law nonetheless dominates this case due to the peculiar nature of the federal statute, which in numerous respects is essentially a vehicle for vindicating state-law warranty claims in federal court.").

Here, Plaintiff has not met the threshold requirements under the Magnuson-Moss Act to bring a suit for damages and other legal equitable relief in a federal district court. Thus, Defendant's Motion to Dismiss Count II is granted.

*Count III (Illinois Uniform Deceptive Trade Practices Act)*

Defendant argues that Count III of the FAC, alleging violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.* ("IUDTPA"), is insufficient, in part, because Plaintiff does not articulate the injunctive relief that he seeks.

The IUDTPA states that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation," the person does any of the following: "(1) represents that goods or services have characteristics that they do not have; (2) represents that goods or services are of a particular standard, quality, or grade if they are of another; or (3) engages in any other conduct which creates a likelihood of confusion or misunderstanding." 815 Ill. Comp. Stat. Ann. 510/2. To sustain a claim under the IUDTPA, a consumer must allege "the requisite elements that would entitle it to injunctive relief, including 'facts which would indicate that [it] is likely to be damaged in the future.'" *Darne,* 2015 WL 9259455, at *12.

While Plaintiff asserts that Ford should stop its continued representations, the FAC does not specify the type of injunctive relief he is actually seeking. Because the FAC does not identify the injunctive relief he seeks, Defendant's Motion to Dismiss Count III is granted.

*Count IV (Illinois Consumer Fraud Act)*

Defendant argues that Plaintiff has not sufficiently pled Defendant's alleged deceptive conduct and that, therefore, Count IV, which alleges violations of the ICFA, should be dismissed. According to Defendant, the FAC does not identify a communication by Ford that omitted disclosure of the Defect or a communication that induced Plaintiff to purchase his Vehicle.

To state a cause of action under the ICFA, plaintiffs must allege: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the

deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Reid v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893, 912 (N.D. Ill. 2013). Claims under the ICFA sound in fraud and therefore must be pled with particularity and specificity as that required under common-law fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (where Plaintiff alleges deceptive conduct, the heightened 9(b) rule applies); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1997); *see Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 2609431, at *4 (N.D. Ill. June 9, 2014) (stating that ICFA claims must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure).

Under Rule 9(b), claims sounding in fraud must allege the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). The Illinois Supreme Court has clarified that:

> [T]o maintain an action under [the ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause . . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.

*De Bouse v. Bayer,* 922 N.E.2d 309, 316 (Ill. 2009).

Here, Plaintiff does not allege that he was deceived by a statement, advertisement or any communication in the FAC. Plaintiff alleges that he "selected and ultimately purchased his vehicle, a model year 2013 Ford Explorer, based on Ford's reputation and in the belief that the Explorer was a safe vehicle[.]" (FAC at ¶ 51). Plaintiff also alleges "[t]he advertisements and representations made by Ford contained neither a disclosure about the Defect nor did they inform

10

the Plaintiff and putative Class Members that there was no fix to the Defect." (*Id*. at ¶ 54.) These allegations alone, without additional detail, do not meet the Rule 9(b) specificity standard. *See Stavropoulos,* 2014 WL 2609431, at * 5 (dismissing ICFA claim for failure to specify contents of communications or advertisements in which an omission allegedly occurred); *Ciszewski v. Denny's Corp.,* No. 09 C 5355, 2010 WL 2220584, at *2 (N.D. Ill. June 2, 2010) (dismissing ICFA claim for failure to specify contents of advertisements); *Camasta v. Jos. A. Banks Clothiers, Inc.,* No. 12 C 7782, 2013 WL 3866507, at *3 (N.D. Ill. July 25, 2013) (same). Accordingly, Defendant's Motion to Dismiss Count IV is granted.

*Count V (Common-Law Fraud)*

Defendant seeks dismissal of Count V, common-law fraud, because Plaintiff failed to plead in accordance with the requirements of Federal Rule of Civil Procedure 9(b).

To sustain a claim for common-law fraud, a plaintiff must plead facts demonstrating that "(1) defendant made a false statement; (2) of material fact; (3) which defendant knew or believed to be false; (4) with the intent to induce plaintiff to act; (5) the plaintiff justifiably relied on the statement; and (6) the plaintiff suffered damage from such reliance." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000). As noted above, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).

In Count V, Plaintiff alleges that Defendant made false misrepresentations that its Vehicles are safe and that Defendant knew or should have known that the Vehicles contain a material safety Defect. (FAC ¶ 126). Plaintiff also alleges that he relied on Defendant's material misrepresentations about the safety of the Vehicles while making the purchase. (*Id.* at ¶¶ 127, 129). However, Plaintiff has not alleged the specifics of Ford's alleged misrepresentations, actions or omissions. Plaintiff has not pointed to a specific communication or advertisement that

11

he relied upon when he purchased his Vehicle. The FAC does not contain additional detail to meet the Rule 9(b) specificity standard. Therefore, Defendant's Motion to Dismiss is granted, and Count V is dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [25] is granted. Within thirty days, Plaintiff may file an amended complaint, if he can do so in compliance with Rule 11.

Date: 10/28/16

JOHN W. DARRAH
United States District Court Judge