**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID SCHIESSER, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FORD MOTOR COMPANY, )<br>)<br>Defendant. ) | No. 16 C 730<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff David Schiesser brings this putative class action against Defendant Ford Motor Company ("Ford"), alleging that certain Ford vehicles have a defect that allows harmful exhaust gases to enter the passenger compartment of the vehicles. The Court previously dismissed Schiesser's first amended complaint. Doc. 44. In his second amended complaint ("SAC"), Schiesser brings claims for breach of express warranty, common law fraud, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq*., and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*. Ford moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court agrees with Ford that Schiesser has failed to correct the deficiencies identified by the Court in dismissing the first amended complaint and that preemption and comity concerns prevent the Court from adjudicating Schiesser's UDTPA claim, the Court dismisses the SAC with prejudice.

## BACKGROUND[1]

Ford represents that its vehicles are "best-in-class" that "lead in quality, fuel efficiency, safety, smart design and value." Doc. 46 ¶ 56 (quoting Ford's 2011 Annual Report). But despite this general representation, its Ford Explorer vehicles have experienced exhaust odor issues stemming from an alleged design defect that causes carbon monoxide to enter the passenger compartment of the vehicle. In December 2012, Ford began issuing Technical Service Bulletins ("TSBs") acknowledging exhaust odor in the cabins of some Ford Explorer models (the "Defect").[2] The TSBs describe the issue as merely an "unpleasant odor," when, in reality, the exhaust seeping into the cabin contains carbon monoxide. *Id.* ¶ 10. The TSBs include instructions on correcting the exhaust odor, although the proposed fixes do not effectively remedy the Defect. Ford provided the TSBs to authorized dealerships, but not to non-Ford automotive repair facilities. Ford also did not disclose these TSBs to its customers.

Ford learned of the Defect before issuing the December 2012 TSB from Ford customers posting about the problem in online discussion forums. In response to customer complaints on such online forums, for example, in July 2011, an "Official Ford Rep" offered to help customers by escalating their problems concerning exhaust odors and arranging for Ford representatives to contact the customers. *Id.* ¶¶ 24–27. Ford also responded to customer complaints by letter in March 2014, noting that it had "performed several inspections and sealing actions . . . to help

---

[1] The facts in the background section are taken from the SAC and exhibits attached thereto and are presumed true for the purpose of resolving Ford's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to Schiesser's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

[2] The Defect affects 2011 to 2015 Ford Explorers. Although it also affects 2011 to 2013 Ford Edge and Lincoln MKX vehicles with 3.5L and 3.7L TIVCT engines, those vehicles are not included in Schiesser's suit.

minimize the amount of odor coming into the passenger compartment" but that the customer "may still experience odor under certain driving conditions such as, when performing wide open throttle (WOT) accelerations with the climate control system in recirculation mode." *Id.* ¶ 32.

Schiesser purchased a model year 2013 Ford Explorer (the "Vehicle") in June 2012 from Joe Rizza Ford in Orland Park, Illinois. He purchased the Vehicle based on Ford's reputation and believing the Vehicle to be safe. The Vehicle came with a warranty, Ford's New Vehicle Limited Warranty (the "Warranty"), limited to three years from the date of purchase or 36,000 miles. The Warranty promises that, while under the applicable coverage period, an authorized Ford dealership would, without charge, repair, replace, or adjust all parts on a vehicle affected by factory defects.

In August or September 2015, Schiesser began noticing exhaust odor accumulating in the passenger cabin of his Vehicle. In October 2015, Schiesser brought his Vehicle to the dealership to service the problem. After being contacted by Schiesser's dealership, Ford allegedly proposed two repairs costing between $800 and $900 but could not guarantee that either repair would fix the problem. Schiesser decided not to incur the cost of repair because neither solution was guaranteed to solve the problem.

The National Highway Transportation Safety Administration ("NHTSA") began investigating the exhaust leak issue in July 2016. Additionally, a federal district court in Florida has preliminarily approved a nationwide settlement addressing the same issues raised in this case, which provides that Ford will issue a new TSB to address the exhaust odor issue. *See Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, Doc. 434 (S.D. Fla. Nov. 18, 2016).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

4

## ANALYSIS

I.  **Breach of Express Warranty Claim (Count I)**

To state a claim for breach of express warranty, Schiesser "must allege the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the warranty's terms, a failure by the defendant to do so, compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 787 (N.D. Ill. 2016) (citations omitted) (internal quotation marks omitted); *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *4–5 (N.D. Ill. Dec. 18, 2015). Schiesser acknowledges that he brought his Vehicle to the dealership for repairs in October 2015, after the Warranty expired, meaning that he must sufficiently allege that the Warranty's time and mileage limitations are unconscionable for the claim to proceed.

A court can invalidate a contract for either procedural or substantive unconscionability. *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 890 F. Supp. 2d 912, 943 (N.D. Ill. 2012); *see Snyder v. Komfort Corp.*, No. 07 C 1335, 2008 WL 2952300, at *4 (N.D. Ill. July 30, 2008) (a written warranty is a contract, and courts interpret contracts according to their plain meaning under Illinois law). "Procedural unconscionability refers to both a situation where a term is so difficult for a plaintiff to find or understand that he cannot have been aware he was agreeing to it and also to a plaintiff's lack of bargaining power or lack of meaningful choice." *Darne*, 2015 WL 9259455, at *7. Substantive unconscionability refers to contract terms which are "inordinately one-sided in one party's favor." *Id*. (quoting *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622, 222 Ill. 2d 75, 305 Ill. Dec. 15 (2006)). Unconscionability may be shown by "acts of bad faith such as concealments, misrepresentations, [or] undue influence." *Singer v.*

5

*Sunbeam Prods., Inc.*, No. 15 C 1783, 2016 WL 1697777, at *4 (N.D. Ill. Apr. 28, 2016) (alteration in original) (quoting *Levey v. CitiMortgage, Inc.*, No. 07 C 2678, 2009 WL 2475222, at *4 (N.D. Ill. Aug. 10, 2009)); *see also Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992) (describing unconscionability as being "closely allied" to the doctrines of fraud and duress).

Illinois courts enforce durational limitations in express warranties. *See, e.g.*, *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950, 359 Ill. App. 3d 504, 296 Ill. Dec. 137 (2005). But, as he did with respect to his first amended complaint, Schiesser argues that the Court should find the Warranty in this case unconscionable because Ford knew of the Defect at the time of sale, making *any* limitation on the warranty unconscionable. At most, Schiesser alleges that, before he bought his Vehicle in June 2012, Ford knew of a number of online complaints of an exhaust odor, with further knowledge accumulating after Schiesser purchased the Vehicle. But the SAC contains no allegations that Ford knew that carbon monoxide was entering vehicle compartments at the time Schiesser purchased his Vehicle. As the Court previously found, the SAC does not allow the inference that Ford knew of the Defect at the time of sale so as to make the Warranty's limitations unconscionable. *See* Doc. 44 at 6–8 (acknowledging Schiesser's argument that the Warranty was unconscionable because Ford knew of the Defect based on consumer complaint as of 2011 but finding these allegations insufficient); *cf. Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 2609431, at *3 (N.D. Ill. June 9, 2014) (finding plaintiff had sufficiently alleged time limitation on warranty was unconscionable where complaint included allegations that fax machine plaintiff purchased was successor of a model that had been the subject of a recall and used many of the same components). Further, although Schiesser now alleges that the fact that his Vehicle came with a

6

factory warranty was important to him in purchasing the Vehicle, this conclusory allegation says nothing concerning Schiesser's knowledge of the terms of the Warranty or the reasons why the durational limitation should be considered too short to discover the Defect. *See Darne*, 2015 WL 9259455, at *8 (finding plaintiffs had not adequately alleged "that the time period or mile duration was unreasonably short"). The Warranty promises to repair, replace, or adjust all parts on a vehicle that are affected by factory defects for the duration of the Warranty, acknowledging the possibility of latent defects. *See* Doc. 48-1 at 15 ("This warranty does not mean that each Ford vehicle is defect free. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. For this reason, Ford provides the New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part malfunction or failure during the warranty period."). As in *Darne*, "the warranty plainly doesn't guarantee an engine that is free of defects . . . . That is the reason for a warranty: to repair any problem that such defects might cause during the warranty period." *Id.* at *5. Without more, Schiesser has not alleged that the Warranty was substantively unconscionable.

Schiesser also argues that Ford presented the Warranty on a "take it or leave it" basis, making it procedurally unconscionable. The Warranty itself indicates that Schiesser could have opted for an extended warranty, defeating Schiesser's claim that he had no meaningful choice when purchasing the Vehicle. *See* Doc. 48-1 at 33 (providing information about Ford's extended service plan); *Darne*, 2015 WL 9259455 at *8 ("If the plaintiffs wanted additional coverage beyond the 'shorter period' of the warranty, they had the option to purchase an extended warranty; this provided the meaningful choice that is unavailable in a procedurally

7

unconscionable contract."). Consequently, Schiesser has not alleged that the Warranty was procedurally unconscionable.

Accordingly, the SAC does not sufficiently allege that the Warranty was procedurally or substantively unconscionable. And because Schiesser did not seek to have a problem repaired within the time period or mileage limitation stated in the Warranty, the Court dismisses his breach of express warranty claim.

## II.     Magnuson-Moss Warranty Act Claim (Count II)

Ford also argues that the Court should dismiss Schiesser's claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, because Schiesser has not sufficiently alleged a breach of express warranty claim under Illinois law. The Magnuson-Moss Warranty Act creates a federal cause of action for breach of written and implied warranties under state law. *See* 15 U.S.C. § 2310(d)(1). A claim under the Magnuson-Moss Warranty Act depends on the existence of a viable underlying state law warranty claim. *See In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 315 (S.D. Ill. 2007) ("Although Plaintiffs bring this action pursuant not to state law but the Magnuson-Moss Act, state law nonetheless dominates this case due to the peculiar nature of the federal statute, which in numerous respects is essentially a vehicle for vindicating state-law warranty claims in federal court."). Here, because Schiesser's state law warranty claim fails, he also cannot make out a claim under the Magnuson-Moss Warranty Act.

## III.    UDTPA Claim (Count III)

The UDTPA provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," among other things, the person represents that goods or services have characteristics they do not have or are of a particular standard, quality, or grade when they are of another, or the person engages in any other conduct that

creates a likelihood of confusion or misunderstanding. 815 Ill. Comp. Stat. 510/2. Ford argues that the Court should dismiss the UDTPA claim because federal law preempts Schiesser's requested injunctive relief, Schiesser has not alleged facts showing that he will be damaged in the future, and Schiesser's requested relief violates the principles of judicial comity.

In the SAC, Schiesser requests injunctive relief in the form of requiring Ford to "develop a fix to the dangerous Defect, and develop a common fund to provide that fix to Plaintiff and all Class Members." Doc. 46 ¶ 161. Ford argues that the National Highway Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30101 *et seq.*, preempts this requested relief. Whether a federal law preempts a state law based action is a question of law. *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir.2000). Preemption occurs when federal law expressly manifests a purpose to override state powers, when there is "field preemption, which arises when the federal regulatory scheme is so pervasive or the federal interest so dominant that it may be inferred that Congress intended to occupy the entire legislative field," and when there is "conflict preemption, which arises when state law conflicts with federal law to the extent that compliance with both federal and state regulations is a physical impossibility, or the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046, 1049 (7th Cir. 2013) (quoting *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 984 (7th Cir. 2012)).

"A nationwide court-ordered recall would conflict directly with and frustrate the Safety Act." *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002). "The problem is that a state law can be preempted if it interferes with the actual goal of a federal statute or if it interferes with the methods by which the federal statute set to achieve the federal

goal, and a court-supervised recall would run roughshod over the recall procedures put forth in the Motor Vehicle Safety Act for an agency-coordinated recall." *Flynn v. FCA US LLC*, No. 15-CV-0855-MJR-DGW, 2016 WL 5341749, at *5 (S.D. Ill. Sept. 23, 2016) (citations omitted). While the Safety Act does not expressly state that only the Secretary of Transportation may order a motor vehicle recall, "the comprehensive nature of the federal administrative scheme" indicates Congress' intent that only the Secretary of Transportation do so. *Lilly*, 2002 WL 84603, at *5 (quoting *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 944 (S.D. Ind. 2001)).

Although Schiesser does not characterize his requested relief in so many words, he clearly seeks a recall. Schiesser asks the Court to "[r]equire Ford to develop a fix to address the Defect, and create a fund to allow Class Members to get the repair free of charge and as part of the warranties provided when purchasing or leasing the Vehicles." Doc. 46 at 48. Schiesser also asks the Court to "[d]etermine that Ford's conduct as alleged herein, including for example in concealing the existence of the exhaust leak defect, and in communicating in Technical Service Bulletins, public statements or otherwise, that there is either no exhaust leak defect or that the defect is limited to an unpleasant odor, is unlawful, unfair, and/or deceptive and otherwise in violation of law, and enjoin such future conduct by Ford." *Id.*

As discussed in *In re Bridgestone*, these requests are part of the Safety Act's comprehensive federal administrative scheme:

> In 49 U.S.C. § 30119, Congress detailed the notification procedure if and when the Secretary of Transportation ("Secretary") determines that a particular vehicle model or its equipment contains a defect or does not comply with other safety standards. *See also* 49 U.S.C. § 30118(b)(2)(A). Among such notification duties to the customer imposed on the manufacturer are "a clear description of the defect or noncompliance," "the measures to be taken to obtain a remedy of the defect or noncompliance," and "the

> earliest date on which the defect or noncompliance will be remedied without charge." 49 U.S.C. § 30119(a). The manufacturer must send notification about a vehicle problem "by first class mail to each person registered under State law as the owner and whose name and address are reasonably ascertainable by the manufacturer through State records or other available sources." 49 U.S.C. § 30119(d)(1)(A). Details even are included as to how the dealer to whom a motor vehicle or replacement equipment was delivered shall receive notice from the manufacturer. 49 U.S.C. § 30119(d)(4). Similar instructions specify how to remedy defects and noncompliance, even decreeing that "[a] manufacturer shall pay fair reimbursement to a dealer providing a remedy without charge under this section." 49 U.S.C. § 30120(f).

*In re Bridgestone*, 153 F. Supp. 2d at 944–45. This squarely addresses Schiesser's requested relief, meaning that the Safety Act preempts Schiesser's UDTPA claim.

Even if the Court did not find Schiesser's claim preempted, the Court would find it appropriate to dismiss this claim based on principles of judicial comity and efficiency. Ford has entered into a nationwide settlement addressing the exhaust odor issues challenged in this suit, a settlement that a court in the Southern District of Florida has preliminarily approved. *See Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, Doc. 434 (S.D. Fla. Nov. 18, 2016). Schiesser, in pursuing his claims here, argues that the proposed remedy in *Sanchez-Knutson* is unsatisfactory and seeks essentially to undo that settlement in favor of proposals he would set forth in this case. But these attempts, particularly with respect to Schiesser's requests for injunctive relief under the UDTPA, run contrary to well-established principles of judicial comity and efficiency. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ("As between federal district courts . . . the general principle is to avoid duplicative litigation."). "The concern manifestly is to avoid the waste of duplication, *to avoid rulings which may trench upon the authority of sister courts*, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep*

11

*Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985) (emphasis added). The Court thus also finds dismissal of the UDTPA claims appropriate so as to avoid interference with the negotiated settlement of the similar deceptive trade practices claims asserted in *Sanchez-Knutson*.

**IV.  ICFA Claim (Count IV)**

To state an ICFA claim, Schiesser must allege (1) a deceptive or unfair act or practice by Ford, (2) Ford's intent that Schiesser rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred in the course of conduct involving trade or commerce, and (4) Ford's deceptive or unfair practice caused Schiesser actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Although Rule 9(b) does not apply to an unfair practices claim under ICFA, Schiesser's ICFA claim is premised on Ford's alleged concealment of a known defect and thus is appropriately interpreted as a deceptive practices claim that must meet Rule 9(b)'s heightened pleading standard. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (addition of "unfairness" language did not change ICFA claim "entirely grounded in fraud" to unfairness claim); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (finding pleading was premised on intentional concealment and therefore appropriately interpreted as deceptive practices claim subject to Rule 9(b), not unfair practices claim subject to Rule 8).

Ford argues Schiesser has not sufficiently identified any communication by Ford, let alone one that omitted disclosure of the Defect, that induced Schiesser to purchase his Vehicle. The Illinois Supreme Court has clarified that:

> [T]o maintain an action under [the ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the

> defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause. . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.

*De Bouse v. Bayer AG*, 922 N.E.2d 309, 316, 235 Ill. 2d 544, 337 Ill. Dec. 186 (2009).

Schiesser cites to several communications made by Ford: the TSBs issued by Ford, letters to customers, materials on a website, and allegations in other lawsuits. Schiesser also alleges that Ford purposefully omitted mention of the Defect in its communications to customers. Schiesser generally alleges that he purchased the Vehicle "based on Ford's reputation and in the belief that the Explorer was a safe vehicle." Doc. 46 ¶ 55. But Schiesser does not allege that he saw or heard any of the allegedly deceptive communications prior to purchasing the Vehicle. Without a plausible link tying the communications to Schiesser's purchase of the Vehicle, these communications cannot serve as the predicate for his ICFA claim. *See De Bouse*, 922 N.E.2d at 316 (requiring that plaintiff claiming an omission-based deception point to the communication in which the omission occurred to state a viable ICFA claim); *Darne*, 2015 WL 9259455, at *9 (plaintiff did not plausibly allege seeing any alleged misstatement or actually being deceived by the statement so as to establish actual deception as required for ICFA claim); *cf. Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 7190809, at *2 (N.D. Ill. Dec. 17, 2014) (finding that plaintiff sufficiently alleged deceptive practices claim where he indicated he viewed the packaging of the fax machine that should have included a fire hazard warning). Thus, the Court dismisses Schiesser's ICFA claim.

## V. Common Law Fraud Claim (Count V)

Ford similarly argues that the Court should dismiss Schiesser's common law fraud claim because Schiesser has not met Rule 9(b)'s particularity requirements. To sustain a common law

13

fraud claim, Schiesser must plead facts demonstrating that "(1) defendant made a false statement; (2) of material fact; (3) which defendant knew or believed to be false; (4) with the intent to induce plaintiff to act; (5) the plaintiff justifiably relied on the statement; and (6) the plaintiff suffered damage from such reliance." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As with his ICFA claim, Schiesser has not pointed to a specific communication or advertisement containing a misrepresentation upon which he relied when purchasing his Vehicle. Therefore, the Court dismisses Schiesser's fraud claim.

## VI.  Dismissal With Prejudice

Given the fact that Schiesser was previously allowed to cure the deficiencies identified by the Court and failed to do so, the Court dismisses Schiesser's second amended complaint with prejudice. *See Camasta*, 761 F.3d at 734–35 (affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the Court grants Ford's motion to dismiss the second amended complaint [47]. The Court dismisses the second amended complaint with prejudice and terminates this case.

Dated: April 6, 2017

SARA L. ELLIS
United States District Judge